1
2
3
4
5
6

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA MARIE BERKEBILE,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>          Defendant. | )  Case No.: 1:14-cv-01530-BAM<br>)<br>)  **ORDER REGARDING PLAINTIFF'S**<br>)  **SOCIAL SECURITY COMPLAINT**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## INTRODUCTION

Plaintiff Teresa Marie Berkebile ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

1

**FACTS AND PRIOR PROCEEDINGS**

On April 4, 2011, Plaintiff filed an application for disability insurance benefits.  AR 165-68.[1] Plaintiff alleged that she became disabled on March 15, 2011, due to sleep apnea and bipolar disorder. AR 107, 165.  Plaintiff's applications were denied initially and on reconsideration.  AR 107-111, 114-118.  Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Danny Pittman held a hearing on January 22, 2013, and issued an order denying benefits on May 17, 2013.  AR 23-37.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-3, 17-18.  This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on December 19, 2012, in Fresno, California.  AR 42-89.  Plaintiff appeared and testified.  She was not represented by counsel.  AR 44.  Impartial Vocational Expert ("VE") Thomas Dachelet also testified.  AR 44, 83.

At the outset of the hearing, the ALJ confirmed that Plaintiff was prepared to proceed with the hearing without a representative.  The ALJ then informed Plaintiff of her right to representation, which she waived.  AR 45-46.  The ALJ also informed Plaintiff that the issue in the case was whether or not she was disabled and provided her the standards for a disability finding.  AR 47-48.

In response to questions from the ALJ, Plaintiff testified that she was born in 1963, was 5'3," and weighed 180.  She was single and lived alone, but had a 31-year old child.  With regard to income, Plaintiff indicated that she was a veteran and received disability from the VA.  She also was receiving worker's comp payments because she was injured at her job.  She was not receiving a disability retirement from the state, but she had applied for it.  AR 48-49.

Plaintiff reported that she had a driver's license and, on average, drove once or twice a week. Plaintiff also reported that she had a bachelor's degree in economics, with a minor in business.  AR 50.  With regard to her military experience, Plaintiff testified that she was in the Army, where she worked as a radio and teletype operator.  She received an honorable discharge in 1988.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that she had not done any work since her alleged onset date of March 15, 2011.  Based on her alleged onset date, the ALJ asked Plaintiff about her official earnings record, which showed earnings of over $17,000 in the first quarter of 2012.  Plaintiff explained that people with lower seniority were offered a lay-off package of that amount.  Plaintiff took the package, but did not work after 2011.  Plaintiff also confirmed that she received unemployment in the first and second quarters of 2012 and that she was still receiving unemployment.  AR 51-52.  When questioned about whether she was actively looking for work, Plaintiff indicated that she had been trying to find work that did not require above-the shoulder, lifting or computer work.  AR 52-53.

When asked if she would have taken a job if offered, Plaintiff explained that she has been good at finding and interviewing for jobs.  She also has been hired for jobs she is not emotionally or mentally able to do.  Although she has not had any requests for interviews, if there was something that she could do, then she would probably try it.  AR 53.  The ALJ then explained that if Plaintiff told the state that she was physically able to work, but now she was saying she could not work, then there was an inconsistency.  Plaintiff understood.  AR 54.

In response to questions about her work history, Plaintiff testified that she worked for Northwest Administrators as a field representative for the teamster's pension fund.  Her duties included travel to various union sites and meetings with members regarding their retirement.  Plaintiff then worked for American Century as an investor relations specialist for 3 ½ or 4 years.  In 2005, Plaintiff then went to work for Kelly Services at State Fund doing miscellaneous projects.  It started as a temp job, but then she was hired permanently.  Plaintiff clarified that she was initially hired as a claims adjuster and was demoted to a program tech.  She worked as a claims adjuster for eight months, which was mostly training, and never became proficient in that job.  She primarily worked as a program tech for State Fund, which was her last job.  AR 54-57.

When asked what prevented her from working, Plaintiff testified that her main issue was obstructive sleep apnea, which prevented her from a good night's sleep.  Plaintiff indicated that she has several days throughout the week when she cannot function and sometimes has to stay in bed because she is not getting sleep.  Plaintiff testified that she cannot predict those days and cannot

schedule herself for a job.  Plaintiff thought the most she could do was a part-time position.  AR 57-58.

Plaintiff confirmed that she was receiving worker's comp for a neck injury, her shoulders, hands, wrists and elbows.  The case was still in process.  AR 58-59.  Plaintiff indicated that she was receiving medical treatment at the VA.  AR 59.

Plaintiff provided additional information regarding her sleep apnea.  She explained that she was waiting for a third surgery, but the apnea made her depressed because she has no energy.  Although she has goals, her body and mental state will not allow her to do it.  Plaintiff reported that she had been working on her sleep apnea since 2004.  She has tried CPAP machines, BiPAP machines, and different masks without resolution.  AR 59.

When questioned about her medications, Plaintiff testified that the medications for depression help control her symptoms.  She also testified that the medications for cholesterol were controlling her cholesterol.  Plaintiff additionally confirmed that she was taking medication for the obstructive sleep apnea.  Plaintiff reported that Dr. Howsepian, her psychiatrist, said that modafinil could help with energy, but it only helped a little.  Plaintiff did not have any noticeable side effects from her medications.  AR 60-61.

In response to questions about her obstructive sleep apnea, Plaintiff testified that she already had two surgeries.  Her third surgery was not yet scheduled due to allergies.  Plaintiff indicated that she had slight improvement with the prior surgeries.  AR 61.

In response to questions about her neck, Plaintiff testified that surgery had not yet been recommended.  She also did not have injections, physical therapy or a neck brace.  AR 61-62.  Plaintiff reported that she has pain in her neck on a daily basis, especially if she drives.  The pain radiates into her arms from her shoulders to her fingers.  She gets numbness on both sides.  When asked to describe the pain, Plaintiff testified that if she turns the wrong way it is a stabbing pain.  Regularly, her neck is stiff and feels strange.  It makes her nervous about doing anything.  She takes Ibuprofen for pain, which does help, but she cannot take it all the time.  Plaintiff reported that driving, typing, writing, lifting, and reaching above her shoulder make her pain worse.  AR 63-65

When asked about her mental health, Plaintiff testified that she had been hospitalized in 1996 and 1997 for depression.  She was in the hospital for two weeks the first time and one week a second time.  She had herself admitted.  Since 2000, she has been receiving mental health treatment with the VA.  She attends individual therapy.  AR 62-63.

In response to questions about her restrictions, Plaintiff testified that she did not have any issues with sitting and could stand about 30 minutes at a time.  Walking and standing bother her shoulders and neck.  Plaintiff testified that she can walk about half a block.  She thought she could lift and carry 10 pounds, which is what her doctor suggested.  She could lift a case of soda, but would have pain.  She could lift a 5-pound bag of potatoes, but not a 20-pound bag.  Plaintiff also testified that it would bother her to use a keyboard on a continuous basis.  Generally, she can use a keyboard, a pen and do buttons and zippers for a short time.  She does not drop things, but has come close.  If she does drop something, she is able to bend over and pick it up.  However, it bothers her to reach overhead, so she tries to avoid it.  AR 66-68.

When asked about memory problems, Plaintiff testified that she has had them since birth from the obstructive sleep apnea.  She is forgetful and has both short and long-term memory problems.  She also has trouble concentrating because she gets distracted.  Plaintiff thought she could follow two and three-step instructions.  She also testified that she has issues getting along with people because she is not patient and is irritable.  She has not been arrested or fired for physical or verbal altercations, but she has created some bad work environments.  Plaintiff additionally reported that she has intermittent crying spells at least weekly.  AR 68-70.

When asked to describe a typical day, Plaintiff testified that she wakes up and feeds and waters her animals.  She has two cats and two dogs.   If she has energy, she tries to do some work around the house, like load the dishwasher.  She will have weeks where she cannot do anything but watch TV because she does not have energy.  She will go without grocery shopping.  AR 70-71.  She sleeps 10 to 12 hours every night and takes naps once or twice a week for two to five hours.  AR 71.  When she is depressed, she is not able to bathe, dress or feed herself.  She sometimes prepares her own meals.  When she has energy, she does her own laundry.  She sometimes vacuums, sweeps or mops the floors.  She has heavy allergies, so she oftentimes does not dust.  She very infrequently does any yard work or

gardening and has someone mow her lawn.  She pays her bills and goes grocery shopping by herself.

She does not go to church, clubs or movies, but she does go to restaurants.  She sometimes visits with

friends or family.  She no longer does any outside activities.  She does not go to athletic events or the

mall.  She likes to do variety puzzle books.  AR 71-73.

Following questioning and statements by the Plaintiff, the VE described his qualifications.

Plaintiff did not have any objections to him testifying.  AR 80-81.  The VE characterized Plaintiff's

past work as general clerk, union field rep and customer service rep.  AR 83-85.

For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age and

education with the same past jobs limited to lifting and carrying up to 50 pounds occasionally and up

to 25 frequently, standing and/or walking up to six hours and sitting up to six hours in an eight-hour

day with normal breaks, limited to frequent balancing, stooping, kneeling, crouching, crawling and

climbing ramps and stairs, no climbing ladders, rope or scaffolds, needing to avoid all exposure to

hazards and limited to simple routine tasks with no more than incidental contact with the general

public.  The VE testified that this individual would not be able to perform any of Plaintiff's past jobs,

but there would be other work available, such as hand packager, machine packager, and laundry

checker.  AR 85-86.

For the second hypothetical, the ALJ asked the VE to add an additional limitation to the first

hypothetical that the individual would be limited to no production rate or pace work.  The VE testified

that this would eliminate all jobs and there would be no work available.  AR 86.

For the third hypothetical, the ALJ asked the VE to assume the same hypothetical individual

precluded from repetitive motions of the neck and upper extremities, no work at or above should level,

no repetitive motions of the hand or fine manipulation, no lifting more than 10 pounds and limited to

standing, walking, and sitting up to six hours each in an eight-hour day.  The VE testified that there

would not be any work for this individual.  AR 86-87.

For the fourth hypothetical, the ALJ asked the VE to add an additional limitation that the

individual would be precluded from any task that required either ongoing interpersonal social contact

or ongoing detailed instructions and required the ability to adapt to changing workplace situations,

pressure to keep up and to attend the details or be scrutinized in the workplace.  The ALJ clarified that

this person would not be able to work in a job where there was ongoing interpersonal or social contact. This person would be able to perform the simple unskilled, but was precluded from any job that required the ability to adapt to changes in the workplace. The VE testified that there would be no work for this person. AR 87-88.

**Medical Record**

The entire medical record was reviewed by the Court. AR 285-809. The relevant medical evidence, summarized here, will be referenced below as necessary to this Court's decision.

On March 10, 2011, Plaintiff sought treatment for continuing neck and shoulder pain. A letter was provided for Plaintiff's employer requesting that Plaintiff be given easy/modified duty for 2 weeks until March 25 and that avoidance of repetitive movements (essentially scanning) was recommended. AR 356-57.

On March 14, 2011, Plaintiff met with Dr. Avek Howsepian, a clinical psychiatrist at the Veteran's Administration ("VA"), and requested augmentation of her medication or some other change to cope with the downturn in her mood. Plaintiff was opting to return to work full-time with accommodations. AR 352-53. Dr. Howsepian wrote a letter to the medical director at the State Compensation Insurance Fund. After reviewing a copy of Plaintiff's job description, Dr. Howsepian opined that, from a psychiatric standpoint, Plaintiff was able to resume full-time work beginning March 31, 2011. However, he recommended that her work days begin later, at 0700, as an accommodation to her difficulties managing stress early in the day. AR 352.

On March 21, 2011, Dr. Howsepian spoke with Plaintiff, who reported that she had not been to work, except for 2 days in the past 2 weeks. Plaintiff explained she had trouble getting to work, was in a destructive mode, her house and car were a mess, she had been thinking about her Army disability claim, had gone gambling once, and smoked cigarettes for a couple days and was smoking pot. Dr. Howsepian discussed his misgivings about Plaintiff's work pattern and avoidance of work. Plaintiff felt trapped between medical leave option and full-time work. Dr. Howsepian strongly urged Plaintiff not to take medical leave option and not pursue a career in the direction of permanent disability. AR 349.

7

On March 29, 2011, Plaintiff met with Dr. Howsepian and reported that she was considering tracheostomy following failed surgical intervention and continuing symptoms.  Dr. Howsepian noted that he discussed in detail his concerns about Plaintiff heading in the direction of disability, "emphasizing [he] did not believe this is in her best interest."  AR 346.  Dr. Howsepian also discussed how the goal of treatment leading to well-being and the goal of disability were diametrically opposed.  AR 346.  On mental status, Plaintiff was dysphoric and stated she was depressed.  She was anxious and clearly apprehensive about the meeting.  AR 346.

On April 6, 2011, Dr. Peter Baylor, a pulmonary staff physician, advised Plaintiff that the only option for her severe obstructive sleep apnea was an elective tracheostomy.  Dr. Baylor offered night-time oxygen, modafinil and a consult with Dr. Cheng regarding a possible tracheostomy.  AR 343-44.

On April 18, 2011, Plaintiff met with Dr. Howsepian.  Plaintiff reported that she was on medical retirement from work for 3 months and was applying for SSD.  Plaintiff planned to resume psychotherapy with Dr. Richardson.  Dr. Howsepian noted Plaintiff continued to attribute a substantial majority of difficulties to obstructive sleep apnea.  AR 332-33.

On April 27, 2011, Plaintiff saw Dr. Pong Ping Cheng, an otolaryngologist, for a surgical opinion.  Dr. Cheng indicated it was difficult to communicate with Plaintiff because of her bipolar disorder.  Dr. Cheng noted that nasal CPAP therapy and palate surgery had both failed.  Plaintiff did not like laryngoscopy and the examination was suboptimal.  Dr. Cheng discussed a tracheostomy, but Plaintiff was resistant.  She also had further studies pending at Stanford.  Although many surgical options were discussed, Dr. Cheng reported that the discussion became acrimonious because of communication problems, and Plaintiff walked out in the middle of the visit.  Dr. Cheng opined that Plaintiff should continue to be treated at Stanford.  AR 324-25.

On May 11, 2011, Plaintiff reported receiving a neck roll/pillow, wedge pillow and heating pad from her VA physical therapist.  Plaintiff also reported that her symptoms were improved with the use of a cervical roll and exercises.  Plaintiff planned to continue physical therapy through Kaiser and the worker's comp program.  Plaintiff cancelled her last scheduled appointment, stating she felt good and the weather was nice, so she was going to do something fun.  The therapist intended to discontinue Plaintiff's VA physical therapy.  AR 320.

8

On July 26, 2011, Dr. Steven Stoltz, a Board Certified Internist, completed a consultative evaluation. On physical examination, Plaintiff was in no obvious distress and was alert and oriented times four. Her grip strength was 60-65-60 in her right and 70-70-65 in her left. The range of motion in her neck and back were within normal limits. Straight leg raising was negative at 90 degrees and Laseque's sign was negative. The range of motion in Plaintiff's shoulders, elbows and wrists was within normal limits. Her strength was 5/5 in all extremities. Dr. Stoltz identified Plaintiff's diagnoses as obstructive sleep apnea, hyperlipidemia, and psychiatric. Dr. Stoltz indicated that Plaintiff was seen "mainly for her obstructive sleep apnea" and Plaintiff had a very long history with multiple interventions, including surgery. AR 383-84. Dr. Stoltz opined that Plaintiff's limitations would be mainly in relationship to the consequences from her obstructive sleep apnea, such as daytime sleepiness and naps. Dr. Stoltz stated that he would limit Plaintiff from working at unprotected heights or around moving mechanical parts. As Plaintiff had a driver's license, Dr. Stoltz did not feel that any limitations were necessary for operating a motor vehicle. Dr. Stoltz further opined that other activities, such as lifting, carrying, sitting, standing, walking and postural activities were without limits. AR 379-384.

On August 20, 2011, Dr. Ekram Michiel, a Board Certified Psychiatrist, completed a consultative psychiatric evaluation. Plaintiff complained of depression, bipolar, severe sleep apnea, chronic fatigue and anxiety. When identifying her habits, Plaintiff stated that she smoked a couple joints of marijuana a day. Plaintiff reported that she was able to take care of her personal hygiene and was able to shop, cook and do household chores sometimes. On mental status examination, Plaintiff's mood was depressed. Her affect was intense, sad and tearful. Her thought process was goal-directed and her thought content was not delusional. She was oriented to person, place and date. Her attention and concentration were fairly intact, as was her immediate recall. Her short-term memory was slightly impaired and her long-term memory was fair. Plaintiff was diagnosed with depressive disorder NOS, anxiety disorder NOS and cannabis dependence. Dr. Michiel assigned Plaintiff a Global Assessment of Functioning ("GAF") of 50-55. Based upon the evaluation, Dr. Michiel believed Plaintiff was able to maintain attention and concentration to carry out simple repetitive job instructions. She was able to relate and interact with coworkers, supervisors and the general public while performing simple job

instructions, but was unable to carry out an extensive variety of technical or complex instructions.  Dr. Michiel also opined that Plaintiff was unable to handle her own funds because of her dependence on marijuana.  AR 388-391.

On August 9, 2011, Plaintiff reported to Dr. Colleen Richardson, a clinical psychologist at the VA, that a friend stayed with her for about a week, helping her around the house and helping her get motivated to start cleaning, washing her car, mopping the floors and tending her lawn.  AR 502.

On August 30, 2011, Dr. Baylor reviewed Plaintiff's sleep study results and indicated that Plaintiff's sleep efficiency was reduced at 78% (normal is greater than 85%).  Dr. Baylor opined that Plaintiff had moderate to severe obstructive sleep apnea.  AR 500.

On August 31, 2011, Plaintiff reported to Dr. Richardson that she continued to do well and was very positive about the direction of her life.  She was losing weight, working in her yard, fixing up her house and taking care of things in her life.  AR 497.

On September 21, 2011, Dr. Richardson noted that Plaintiff continued to do well, maintaining her current level of elevated mood and doing things around her house.  AR 497.

On October 13, 2011, Alvin Smith, Ph.D., completed a Psychiatric Review Technique form. Dr. Smith opined that Plaintiff had mild restriction in the activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  She had no repeated episodes of decompensation.  AR 392-402.

Dr. Smith also completed a Mental Residual Functional Capacity Assessment form.  Dr. Smith opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, in the ability to carry out detailed instructions, and in the ability to maintain attention and concentration for extended periods.  She also was moderately limited in the ability to work in coordination or proximity to others without being distracted by them, in the ability to interact appropriately with the general public and in the ability to get along with coworkers or peers without districting them or exhibiting behavioral extremes.  Dr. Smith concluded that Plaintiff retained the capacity to understand, remember, and carry out non-complex instructions, attend and concentrate for extended periods without significant interruptions, exercise reasonable judgment in a workplace

10

setting and complete a routine workday that involved no more than incidental contact with the general public. AR 403-05.

On October 18, 2011, Dr. Craig Billinghurst completed a Physical Residual Functional Capacity Assessment form. Dr. Billinghurst opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or pull without limitation. She could frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffolds. She had no manipulative, visual or communicative limitations, but must avoid all exposure to hazards (machinery, heights, etc.). AR 406-412.

On October 26, 2011, Dr. Richardson noted Plaintiff continued to do well, maintaining her current level of elevated mood and doing things around her house. Plaintiff reported that she went on a vacation to Cambria for several days. AR 484.

On December, 1, 2011, Plaintiff reported to Dr. Richardson that she was still doing very well. Plaintiff had cooked Thanksgiving dinner for 5 friends, making a 24.5 pound turkey, a ham and all the fixings. AR 471.

A December 1, 2011 x-ray of Plaintiff's right hand showed minimal degenerative changes. A subsequent x-ray on December 13, 2011 showed no significant change from December 1. AR 424-25.

On December 16, 2011, Plaintiff began a physical fitness program with the VA. AR 450.

On December 22, 2011, Dr. Richardson indicated that Plaintiff continued to do well outside of therapy. AR 451.

On December 29, 2011, Plaintiff reviewed with Dr. Richardson a list of pros and cons of either leaving or staying with her job at the state. Dr. Richardson observed that Plaintiff's memory and concentration were adequate, she was oriented to person, place, time and situation and her thought processes were linear, logical and goal directed. AR 449.

On January 5, 2012, Plaintiff reported to Dr. Howsepian that she was doing extremely well, which she largely attributed to no longer being shackled to her old job. Plaintiff also reported that she was looking into an ATM franchise, participating in a seminar, thinking about transporting cars from out the area for sale and thinking about law school. Plaintiff also informed Dr. Howsepian that she

1   had Thanksgiving at her home with guests.  On mental status, Plaintiff's mood was significantly

2   elevated and she reported much more fluid thoughts.  Dr. Howsepian indicated that her assessment

3   was suspicious for hypomania.  AR 445.

4          On February 10, 2012, Plaintiff reported to Dr. Richardson that her parents were in town and

5   she was enjoying spending some time with them.  Plaintiff's mood was euthymic with mood

6   congruent affect.  Her memory and concentration were adequate and she was oriented to person, place,

7   time and situation.  Her thought processes were linear, logical, and goal directed.  Her judgment and

8   insight were intact.  AR 442.

9          On March 12, 2012, Dr. Blaine Johnson, an orthopaedic surgeon, completed a Qualified

10  Medical Evaluation.  Following a review of records and examination, Dr. Johnson diagnosed Plaintiff

11  with multilevel degenerative disk and degenerative joint disease, greatest seen at C6-7, with associated

12  cervical spine sprain/strain and muscle spasm, including paracervical muscles and trapezii, bilateral

13  bicipital tendinitis, bilateral acromioclavicular joint degenerative joint disease, right shoulder

14  impingement, bilateral carpal tunnel syndrome, worse on the right than on the left, and flexor carpi

15  radialis longus tendinitis bilaterally.  With regard to work restrictions, Dr. Johnson opined that

16  Plaintiff was precluded from repetitive motions of her neck and upper extremities, no work at or above

17  the shoulder level, no repetitive motions of hands or fine manipulation and no lifting of more than 10

18  pounds.  AR 504-24.

19         On May 10, 2012, Dr. Howsepian indicated that Plaintiff continued to do very well, which she

20  attributed to no longer working at her previous place of employment.  AR 790.

21         On July 19, 2012, Plaintiff reported to Dr. Richardson that she had taken a trip to see her

22  parents in Idaho.  Plaintiff also reported that she "had never felt so good in her life."  AR 787.  Dr.

23  Richardson indicated that they would like have one or two more sessions before terminating.  AR 787.

24         On September 20, 2012, Dr. Howsepian noted that Plaintiff was doing better than he had seen

25  her.  Plaintiff planned to open her own business on her land.  Plaintiff asked which medication they

26  might discontinue in light of how well she was doing.  However, Plaintiff was to continue with her

27  current medications.  AR 768-69.

28

On October 15, 2012, Dr. Howsepian prepared a Physician' Report on Disability form. Plaintiff's diagnoses were identified as Bipolar Disorder, Type II, and social anxiety disorder. Dr. Howsepian opined that Plaintiff was substantially incapacitated from performance of the usual duties of the position for her current employer. Dr. Howsepian indicated that although Plaintiff was currently stable on multiple psychiatric medications, any tasks that required either interpersonal/social contact or detailed instructions and required the ability to adapt to changing workplace situations, pressure to keep up to attend deal and be scrutinized in the workplace was highly likely to result in emotional decompensation. AR 637-38.

**Evidence Submitted to Appeals Council**

On May 19, 2013, Dr. Baylor completed a questionnaire and opined that Plaintiff's medical problems precluded her from performing any full-time work at any exertional level, including the sedentary level. Dr. Baylor identified Plaintiff's primary impairment as severe obstructive sleep apnea. He further opined that Plaintiff could sit, stand or walk for several hours at one time, but she could fall asleep easily by day. He also indicated that she could sit, stand and walk several hours in an 8-hour period, but could fall asleep at inappropriate times by day. Dr. Baylor indicated that when daytime somnolence is severe, Plaintiff may need to lie down and she was unable to stay fully awake by day like a normal person. AR 809.

On May 21, 2013, Dr. Howsepian completed a Medical Source Statement, Psychiatric form. Dr. Howsepian opined that Plaintiff had marked limitations in the ability to relate and interact with supervisors and co-workers, maintain concentration and attention for at least two hour increments, and withstand the stress and pressure associated with an eight-hour work day and day-to-day work. Plaintiff also had moderate limitations in the ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions and deal with the public. Dr. Howsepian indicated that Plaintiff had been depressed since childhood and had a very difficult time with anxiety and dealing with stress. AR 808.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 26-37. More particularly, the ALJ

found that Plaintiff had not engaged in any substantial gainful activity since March 15, 2011, her alleged onset date.  AR 28.  Further, the ALJ identified obstructive sleep apnea, cervical degenerative disc disease, depressive disorder, anxiety disorder, obesity, tendonitis and osteoarthritis as severe impairments.  AR 28.   Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 28-30.  Based on his review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of medium work.  She could occasionally lift and carry up to 50 pounds and frequently 25 pounds, stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday with normal breaks.  She also had postural limitations to include frequent balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs, but no climbing ladders, ropes and scaffolds.  She must avoid all exposure to hazards and was limited to simple, routine tasks with no more than incidental contact with the general public.  AR 30-36.  The ALJ found that Plaintiff could not perform any of her past relevant work, but there were other jobs existing in significant numbers in the national economy that Plaintiff could perform.  AR 36-37.  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  AR 37.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

<u>REVIEW</u>

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the Commissioner's decision should be reversed because (1) the ALJ's RFC finding is based on insubstantial evidence and legal error; (2) the ALJ gave legally insufficient reasons for rejecting Dr. Howsepian's opinion; (3) the Appeals Council failed to address Dr. Baylor's opinion; (4) the ALJ's reasons for discrediting Plaintiff are not clear and convincing; and (5) the ALJ did not fully and fairly develop the record.

<u>DISCUSSION</u>[2]

**I.      Substantial Evidence Supports the ALJ's Physical RFC Assessment**

Plaintiff first argues that the ALJ's physical RFC erroneously rejected the opinion of Dr. Johnson, Plaintiff's qualified medical examiner, in favor of the opinion of Dr. Billinghurst, a non-treating state agency physician.  (Doc. 15 at 15.)   The Commissioner contends, however, that the ALJ considered all evidence in the record, including the opinions of Drs. Johnson and Billinghurst, and properly assessed Plaintiff's physical RFC based on substantial evidence.  (Doc. 16 at 13-15.)

*///*

---

[2]      The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

## A.  Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). The Commissioner may not reject the opinion of either an examining physician or a treating physician, even if contradicted, without specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). Further, the opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a physician if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion. *Batson v. Comm' r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id*.; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871, 874–75 (9th Cir. 2003); *Morgan v. Comm' r of Soc. Sec. Admin.*, 169 F.3d 595, 600–601 (9th Cir. 1999).

## B.  The ALJ Correctly Weighed the Medical Evidence

Plaintiff argues that the ALJ improperly rejected the opinion of Dr. Johnson, an examining physician, and improperly assigned greater weight to the opinion of Dr. Billinghurst, a non-examining state agency physician.  (Doc. 15 at 15-18).  The Court disagrees.  The ALJ reviewed the entire

medical record and, in the absence of a treating physician's opinion, reasonably gave the greatest weight to Dr. Billinghurst's opinion in determining Plaintiff's physical RFC. AR 35. The ALJ assigned Dr. Johnson's opinion limited weight based upon, among other things, Plaintiff's routine activities, along with her reports in the medical record regarding a higher level of functioning. AR 36.

### 1.    Dr. Billinghurst

On October 18, 2011, Dr. Billinghurst reviewed the medical record and provided a physical RFC assessment. AR 406-412. Dr. Billinghurst found Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. AR 407. He also found that Plaintiff could frequently balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffold and must avoid hazards, such as machinery and heights. AR 409-10.

### 2.    Dr. Johnson

On March 12, 2012, Dr. Johnson completed a Qualified Medical Examination for worker's compensation, reviewed medical records and provided an assessment of Plaintiff's work restrictions. AR 504-524. Dr. Johnson found that Plaintiff had work preclusions from repetitive motions of her neck, repetitive motions of her upper extremities, no work at or above the level of the shoulders, no repetitive motions of her hands or fine manipulation and no lifting of more than 10 pounds. AR 523.

### 3.    Analysis

As noted above, the ALJ found that Plaintiff retained the physical RFC for a limited range of medium work. She could lift and carry up to 50 pounds occasionally and 25 pounds frequently, could stand and/or walk for 6 hours and could sit for 6 hours in an 8-hour workday. However, she could not climb ladders, ropes and scaffolds and must also avoid all exposure to hazards. AR 30-36. In so finding, the ALJ gave "limited weight" to Dr. Johnson's opinion and "great weight" to Dr. Billinghurst's assessment. AR 34.

With respect to Dr. Johnson, the ALJ gave limited weight to the examining physician's opinion that Plaintiff was precluded from repetitive motions of her neck, repetitive motions of her upper extremities, no work at or above the level of the shoulders, no repetitive motions of her hand or find manipulation, and no lifting of more than 10 pounds because Plaintiff's routine activities and her

reports in the medical record established a greater level of functioning.  AR 34-35.  An ALJ properly may discount a physician's opinion based on conflicting evidence in the record regarding claimant's daily activities. *See Morgan,* 169 F.3d at 600–602.  In this instance, the ALJ cited Plaintiff's August 2011 report in the medical records that she was doing well, working in her yard and fixing up her house.  AR 35, 502.  The ALJ also cited Plaintiff's report in October 2011 that she travelled on vacation for several days, Plaintiff's report in December 2011 that she cooked Thanksgiving dinner for five of her friends, making a 24.5 pound turkey, a ham and all the fixings, and Plaintiff's reported participation in a physical fitness program.  AR 35, 450, 471, 484.  Additionally, the ALJ relied on Plaintiff's testimony that she does all of her household chores except yard work, does puzzles and independently cares for two cats and two dogs.  AR 35, 70-73.  Although the evidence may be subject to an alternate interpretation, the ALJ's interpretation is rational and entitled to deference.  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's decision to give greater weight to Dr. Billinghurst's opinion because it was consistent with the objective evidence of record.  AR 34.  "[W]hen it is an *examining* physician's opinion that the ALJ has rejected in reliance on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis in original).  In addition to the foregoing support from Plaintiff's reported activities in the medical evidence, other evidence in the record supported the ALJ's determination to assign greater weight to the opinion of Dr. Billinghurst.  This included the opinion of another examining physician, Dr. Stoltz.  AR 30, 31.  Following a physical examination, which included range of motion and grip strength testing, Dr. Stoltz identified an essentially normal exam with limitations only from working at unprotected heights or around moving mechanical parts based on Plaintiff's history of sleep apnea.  AR 30, 379-84.  Reports of consultative physicians may serve as substantial evidence.  *Andrews*, 53 F.3d at 1041.  The Court finds the ALJ's treatment of Dr. Billinghurst's opinion is not erroneous, is

supported by the record, and therefore must be affirmed. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Accordingly, the Court will not reverse or remand the ALJ's decision on this ground.

## II.     The ALJ Properly Evaluated Dr. Howsepian's Opinion

Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of Dr. Howsepian, her treating psychiatrist.  (Doc. 15 at 19).  The Commissioner counters that the ALJ properly discounted Dr. Howsepian's opinion because it was inconsistent with his assessment, treatment records and other opinions in the record.  (Doc. 16 at 18-19).

### 1.  Dr. Howsepian

On October 15, 2012, Dr. Howsepian provided a Physician' Report form, which identified Plaintiff's diagnoses as Bipolar Disorder, Type II, and social anxiety disorder.  Dr. Howsepian opined that although Plaintiff was currently stable on multiple psychiatric medications, any tasks that required either interpersonal/social contact or detailed instructions and required the ability to adapt to changing workplace situations, pressure to keep up to attend deal and be scrutinized in the workplace were highly likely to result in emotional decompensation.  AR 637-38.

### 2.  Drs. Michiel and Smith

On August 20, 2011, Dr. Michiel, a consultative examiner, diagnosed Plaintiff with depressive disorder NOS, anxiety disorder NOS and cannabis dependence.  Based upon his evaluation, Dr. Michiel believed Plaintiff was able to maintain attention and concentration to carry out simple repetitive job instructions.  She was able to relate and interact with coworkers, supervisors and the general public while performing simple job instructions, but was unable to carry out an extensive variety of technical or complex instructions.  AR 388-391.

On October 13, 2011, Dr. Smith, a state agency consultant, completed both a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment form.  Dr. Smith concluded that Plaintiff retained the capacity to understand, remember, and carry out non-complex instructions, attend and concentrate for extended periods without significant interruptions, exercise reasonable judgment in workplace setting and complete a routine workday that involved no more than incidental contact with the general public.  AR 403-05.

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.   Analysis

In this case, the ALJ provided specific and legitimate reasons for rejecting the limitations found by Plaintiff's treating physician in favor of the consultative examiner.  The ALJ gave "very little weight" to Dr. Howsepian's assessment because it was inconsistent with his own opinion as well as other opinions in the record.

First, the ALJ discounted Dr. Howsepian's opinion because it was inconsistent with his own opinions and internally inconsistent.  *See*, *e.g.*, *Bayliss*, 427 F.3d at 1216 (discrepancies between doctor's opinion and doctor's other recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion); *Batson*, 359 F.3d at 1195 n.3 (ALJ may reject a treating physician's opinion that is not supported by his or her treatment notes); *Thomas*, 278 F.3d at 957 (ALJ may reject treating physician opinion inconsistent with own records and prior opinions).  Here, the ALJ properly contrasted Dr. Howsepian's opinion that Plaintiff's difficulty with mood and anxiety symptoms had been present since childhood and work related stressors incapacitated her with record evidence that she had these symptoms for a longitudinal period but was able to work and obtain a college degree.  AR 35.  Additionally, the ALJ cited to the internal inconsistency in Dr. Howsepian's opinion regarding Plaintiff's limitations with his statement that Plaintiff's symptoms were "currently stable."  AR 34, 637-38.  Further, the ALJ referenced Plaintiff's mental health treatment notes, which conflicted with Dr. Howsepian's own opinion.  For example, the ALJ identified treatment records from September 2011 noting Plaintiff was doing well, along with treatment notes from October 2011 noting that Plaintiff continued to do well, was doing things around her house and enjoyed a vacation to Cambria for several days with a new group of friends, and Dr. Howsepian's treatment notes from January 2012 noting Plaintiff to be "doing extremely well" and looking into franchise businesses and law school.  AR 32, 445, 484, 497.

Second, the ALJ accorded "significant weight" to the opinion of Dr. Michiel, the consultative examiner.   Dr. Michiel's opinion constitutes substantial evidence, because it rests on his own independent examination of Plaintiff.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  Consistent with the ALJ's mental RFC finding, Dr. Michiel found that Plaintiff could carry out simple repetitive job instructions.  AR 388-391.

1   Third, the ALJ credited the opinion of Dr. Smith, the state agency consultant, because it was

2   consistent with the objective record of evidence.   AR 34.   Dr. Smith acknowledged Plaintiff's

3   treatment records with the VA, which indicated fairly normal mental status presentations.   AR 402.

4   Further, Dr. Smith credited the findings from Dr. Michiel's examination, which included activities of

5   daily living indicating that she could independently manage her basic needs, take care of her affairs,

6   travel and socialize on a limited basis.   AR 402.   An opinion of a state agency consultant also

7   constitutes substantial evidence supporting the ALJ's decision if is consistent with the examining

8   psychologist's opinions, underlying independent examinations and treatment records. *See Tonapetyan*,

9   242 F.3d at 1149 (opinions of nontreating or nonexamining doctors may serve as substantial evidence

10   when consistent with independent clinical findings or other evidence in the record); *Andrews*, 53 F.3d

11   at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial

12   evidence when they are supported by other evidence in the record and are consistent with it").

13   Contrary to Plaintiff's argument, the subsequent evidence submitted to the Appeals Council

14   does not undermine the ALJ's decision to discount Dr. Howsepian's opinion.   The ALJ considered the

15   entirety of the medical record, which included the contrary opinions of consultative examiners and

16   state agency consultants and Dr. Howsepian's own treatment records, in discounting Dr. Howsepian's

17   opinions and developing a mental RFC.   An additional opinion from Dr. Howsepian does not

18   undermine the ALJ's findings.   The Court therefore finds that the ALJ gave specific and legitimate

19   reasons for discounting Dr. Howsepian's opinion.

20   **III.      The Appeals Council Properly Addressed Later Submitted Evidence**

21   Plaintiff submitted the opinion of Dr. Baylor to the Appeals Council in conjunction with her

22   request for review of the ALJ's hearing decision.   The Appeals Council received this evidence and

23   made it part of the record.   AR 5.   Plaintiff now contends the Appeals Council's failure to mention the

24   opinion of Dr. Baylor in its analysis was legal error.   (Doc. 15 at 23).

25   Contrary to Plaintiff's argument, the Appeals Council expressly addressed the later submitted

26   evidence, which included Dr. Baylor's opinion.   AR 1, 5.   The Appeals Council concluded that the

27   information did not provide a basis for changing the ALJ's decision.   AR 2.

28

As the Appeals Council accepted and considered this later submitted evidence, the Court also must consider such evidence in its review.  "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  The Court therefore turns to the opinion of Dr. Baylor submitted to the Appeal Council.

In his opinion, Dr. Baylor identified Plaintiff's primary impairment as severe obstructive apnea.  Although he opined that Plaintiff could sit, stand and walk several hours in an 8-hour period, he indicated that she could fall asleep at inappropriate times.  He also indicated that when her daytime somnolence was severe, she may need to lie down.  Dr. Baylor stated that Plaintiff was unable to stay fully awake by day like a normal person.  AR 809.

The Court finds that Plaintiff has not established that there is a reasonable possibility that this evidence from Dr. Baylor would have changed the ALJ's decision.  *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (to warrant a remand, claimant must show "reasonable possibility" that new evidence would have changed outcome of administrative hearing).  This is particularly true given that the medical opinion evidence of record considered by the ALJ accounted for Plaintiff's daytime somnolence.  For instance, Dr. Stoltz, the consultative examiner, opined that Plaintiff's limitations were mainly in relationship to the consequences from her obstructive sleep apnea, such as daytime sleepiness and naps.  Dr. Stoltz therefore assessed limitations on working at unprotected heights or around moving mechanical parts.  AR 379-384.  Further, Dr. Billinghurst, the state agency consultant, similarly limited Plaintiff from climbing ladders, ropes and scaffolds and working around hazards, such as machinery and heights.  AR 407-10.  In reaching this determination, Dr. Billinghurst considered Dr. Stoltz's opinion, which showed an essentially normal exam "with limitations related to sleepiness."  AR 407.  As discussed above, the ALJ's decision to afford great weight to the opinion of Dr. Billinghurst was supported by substantial evidence and not in error.

**IV.   The ALJ Properly Evaluated Plaintiff's Credibility**

Plaintiff next argues that the ALJ's reasons for discrediting her were not clear and convincing.  (Doc. 15 at 24).  The Commissioner counters that the ALJ articulated sufficient reasons for finding

Plaintiff's subjective complaints not fully credible.  The Court finds that the ALJ properly assessed Plaintiff's credibility.

In deciding whether to admit a claimant's subjective complaints of pain, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence.").  Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 34.  At the second step of the analysis, however, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. AR 34.  In so doing, the ALJ provided several clear and convincing reasons for finding her "not fully credible." AR 35.

First, the ALJ found that Plaintiff's allegations were not supported by the objective evidence. AR 34. An ALJ is entitled to consider whether there is a lack of medical evidence to corroborate a claimant's alleged symptoms so long as it is not the only reason for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Batson*, 359 F.3d at 1196-97 (ALJ properly relied on objective medical evidence and medical opinions in determining credibility). With regard to her physical limitations, the ALJ considered record evidence that Plaintiff continued to be able to walk and move in a satisfactory manner, along with evidence that showed no significant

muscle weakness or any loss of control or muscle wasting in her arms and legs.  AR 34, 379-84.  The ALJ also considered radiology studies that showed minimal degenerative changes in her hands, feet and ankles.  AR 34, 424-25.  With regard to her mental limitations, the ALJ considered not only medical evidence of her ability to think and communicate, but also multiple reports in 2011 and 2012 that she was doing well.  AR 34, 445, 449, 451, 471, 484, 497, 768-69, 787, 790.

Second, the ALJ discounted Plaintiff's credibility based on her reported activities.  AR 34-35.  An ALJ may properly consider a plaintiff's daily activities when discounting a plaintiff's subjective testimony.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (evidence that plaintiff "exercised and undertook several projects after he retired" suggested that his "later claims about the severity of his limitations were exaggerated"); *Mulligan v. Colvin*, No. 1:14-cv-1023-BAM, 2015 WL 5687661, at * 5 (E.D. Cal. Sept. 25, 2015) (discounting credibility where plaintiff maintained his own personal hygiene, prepared meals, performed light household chores and yard work once or twice a week, and shopped a couple times a month).  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.  Here, the ALJ found that Plaintiff does all the household chores, except for yard work, independently cares for her pets, worked in her yard, fixed up her house, socialized, travelled on vacation, cooked Thanksgiving dinner, and started a program for physical fitness.  AR 34, 70-73, 450, 471, 484, 497.

Third, the ALJ also considered that Plaintiff collected unemployment benefits during her purported period of disability and she testified that she would have accepted work if it had been offered.  AR 35, 51-54.  Receipt of unemployment benefits, coupled with record evidence that the claimant held herself out as available for work, can undermine a claimant's alleged inability to work full time.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-1162 (9th Cir. 2008) ("receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime").

The ALJ provided clear and convincing reasons for finding Plaintiff not fully credible.

## V.   The ALJ Fully and Fairly Developed the Record

As a final argument, Plaintiff alleges that the ALJ failed to fully and fairly develop the record, a duty that was enhanced because Plaintiff was not represented by legal counsel at the hearing.  (Doc.

24

15 at 27-29).  In particular, Plaintiff faults the ALJ for failing to obtain Plaintiff's treatment records from Kaiser or any other records upon which Dr. Johnson based his opinion.  (Doc. 15 at 28).

An ALJ's duty to develop the record is triggered if there is ambiguous evidence or the record is inadequate for proper evaluation of evidence.  When such a duty is triggered, an ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources; (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines the ability to resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians; (4) continuing the hearing; or (5) keeping the record open for more supplementation. *Tonapetyan*, 242 F.3d at 1150; 20 C.F.R. § 404.1517.

Here, there is no indication that the record was ambiguous or inadequate for proper evaluation of Plaintiff's physical capabilities, including the limitations identified by Dr. Johnson, a worker's compensation evaluator.  Dr. Johnson precluded Plaintiff from repetitive motions of her neck and upper extremities, work at or above the shoulder level, repetitive motions of hands or fine manipulation and lifting of more than 10 pounds.  Dr. Johnson's report contained a summary of Plaintiff's medical records related to her neck, shoulders and arms.  AR 504-524.  Moreover, Plaintiff's application for disability insurance benefits was not premised on issues related to her neck, arms or hands. AR 107, 165.  Further, and more critically, the record contained independent evaluations of Plaintiff's physical abilities, including examination by Dr. Stoltz, along with assessments by state agency consultants versed in Social Security standards.  AR 379-384, 406-412, 525-30.

### CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

///

///

The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Teresa Marie Berkebile.

IT IS SO ORDERED.

Dated:   **March 7, 2016**                      /s/ Barbara A. McAuliffe
                                                  UNITED STATES MAGISTRATE JUDGE